EDDY, JAMESON & Co., Respondents, *v.* LIVINGSTON, KINCAID & Co., Appellants.

*Bailment—Mandatary—Negligence.*—A mandatary who has received money for the purpose of transmitting it to the owner, is bound to perform his undertaking in good faith, and with diligence adequate to the trust reposed in him. Due diligence is a question of fact to be determined from the evidence. Money was deposited with A., a gratuitous bailee, residing at Utah, to be remitted to B., residing at St. Louis. The usual method of remitting moneys (there being no bankers) was for several persons to unite together and purchase the drafts of United States officers upon the department at Washington. A. put the money of B. with his own, others uniting with him, and took the draft of the United States marshal upon the Treasury Department. The draft was refused payment. *Held,* that A. would not be liable if he acted in good faith and with ordinary care in the manner usual in transmitting moneys in such cases.

*Appeal from St. Louis Circuit Court.*

For statement of the facts, see opinion.

The court, at the request of the plaintiffs, gave the following instruction. (See opinion.)

To the giving of this instruction the defendants excepted.

The defendants asked the court to give the following instructions:

1. If the money in question was deposited with the defendants to be by them invested in a draft on the east, in order to be remitted to the plaintiffs, that the defendants, in so investing it, were to exercise their discretion as to the kind of draft they should purchase; that the defendants acted in the premises without compensation; that they invested the money, along with money of their own and of other perpersons, in a draft drawn by Joseph L. Heywood on the Secretary of the Treasury of the United States; that the defendants, in buying said draft, acted in good faith, for the purpose of remitting said money to the east for the plaintiffs in the same manner that they remitted their own, and had good reason to believe that said draft would be paid on presentation to the drawee; that the plaintiffs were, in the spring or summer of 1856, notified by defendants of the investment of said money in said draft, and did not, up to the institution of this suit in April, 1859, repudiate or object to the mode of remittance adopted by the defendants, then the plaintiffs are not entitled to recover.

2. If the defendants acted in good faith in investing the money in question, along with their own money and that of others, in the draft drawn by Joseph L. Heywood on the Secretary of the Treasury, the fact that the said draft was not made payable to plaintiffs, but was made payable to defendants, does not entitle the plaintiffs to recover, if the plaintiffs had notice of that fact, and did not, from the time of such notice up to the time of the institution of this suit, make any objection thereto; nor does the fact of such joint investment of moneys in said draft make the defendants liable therefor, if the plaintiffs had notice of such fact, and did not object thereto.

3. The defendants, in regard to the remittance of the

money in question, were, in law, agents of the plaintiffs ; and if the plaintiffs, after receiving notice of the mode of remittance adopted by the defendants, did not within a reasonable time repudiate or object to the same, they are to be considered as having ratified the act of the defendants, and are not entitled to recover.

The court refused to give any of these instructions, and the defendants excepted.

*Krum & Harding*, for respondents.

I. The Supreme Court will not try questions of fact, nor weigh the evidence by which they are solved. (Papin v. Allen, 23 Mo. 26.) There being evidence proving, or tending to prove, the facts hypothetically stated in the instruction given by the court below at the request of respondents, those facts will consequently be regarded as the facts in the case.

It appears, then, that the appellants were not mere naked depositaries, but that the deposit was connected with an undertaking or agreement to transmit the funds deposited to respondents at St. Louis, by purchasing therewith a safe or reliable draft or drafts ; that, instead of doing so, appellants took the money, added other money of their own and that of other parties to it, and invested the whole sum in a large draft payable to themselves or their agents, without the consent of the respondents ; also, that appellants held and kept control of said draft, and compounded and received part payment thereof in discharge of the whole, without the consent of the plaintiffs (respondents).

II. Upon the facts as stated, the court properly declared the law. Regarding appellants as bailees, the bailment was coupled with their undertaking to transmit the money to respondents, and to no one else ; regarding them as agents, their instructions were to make such transmissal. In the one capacity they are liable for a violation of their undertaking, and in the other for disregarding their instructions.

(Fellows v. Gordon, 8 B. Monroe, 15; Rutgers v. Lucet, 2 Johns. Ca. 92.)

It appears from the testimony that the amount actually paid upon the draft was greater than the amount of respondents' deposit. Had appellants procured a draft in favor of respondents for the amount deposited by them, it might have been paid in full, or respondents might have sold the draft, or compounded on favorable terms; at all events, they were entitled to the control of their own affairs, and appellants were guilty of a misfeasance in placing the fund wholly out of the power or control of respondents. As to misfeasance by a mandatary, 4 Johns. 84 et seq.; Sto. Bail. § 171, b., &c., &c.

III. The court did not err in refusing instructions asked by appellants. The first two instructions refused assume the converse of the above propositions to be the law, and assume a fact not proved; viz: that respondents had notice of the method of remittance adopted by appellants. The third asserts that if they had such notice after the transaction was complete, and did not repudiate it in reasonable time, they have ratified appellants' acts.

Bay, Judge, delivered the opinion of the court.

Both plaintiffs and defendants were merchants; the former doing business in the city of St. Louis, and the latter in Salt Lake City, Territory of Utah. During the latter part of 1855, a clerk of the defendants, by the name of Voorhis, collected in Salt Lake City for the plaintiffs the sum of $1,500 in coin, and having no means of sending the same to St. Louis, and being unable to procure a bill of exchange, for the reason that there were no bankers or dealers in exchange at Salt Lake City, nor person from whom exchange could be bought in such sums as the purchaser might desire, deposited said money with said defendants for safe keeping, and with a view to their buying exchange with it and forwarding east by first good opportunity. The undertaking of

defendants was without any compensation paid, or to be paid, and was a mere act of kindness and courtesy on the part of one business house towards another.

It appears from the evidence preserved in the bill of exceptions, that the principal portion of exchange upon the eastern States was furnished by the drafts of officers upon the treasury of the United States, in such amounts as the officers had need of, and were supposed to have authority to draw. Frequently, several persons who desired to make remittances to the eastern States would unite their funds and purchase an officer's draft as a means of remitting.

The defendants in this case, using the money of the plaintiffs deposited with them as aforesaid, and other money of their own, and also money of other persons, bought a draft drawn by one Heywood, Marshal of the United States for said Territory of Utah, upon the treasury of the United States at Washington City, for $15,209.93, and remitted the same to their agent in St. Louis, with directions to pay the proceeds, when received, to the several persons entitled thereto, among whom were the plaintiffs, to whom the agent was directed to pay said sum of $1,500.

At the time said draft was purchased Heywood was in good credit, and his drafts eagerly sought for as a means of remitting money. The draft was in due time presented at the United States Treasury for payment, and payment was refused upon the alleged ground that Haywood had not settled his accounts with the Government. Subsequently, and since the institution of this suit, defendants settled with the Government by giving up the draft on payment to them of about one-fourth of its face (and petitioned Congress to reimburse them for their loss).

The plaintiffs in this suit seek to charge the defendants for their failure to transmit to them the money received by them as aforesaid.

The cause was submitted to the court without a jury, and judgment was rendered for the full amount claimed, from which the defendants have appealed to this court.

At the trial, the court declared the law applicable to the case to be as follows:

"If the court find from the evidence, that the plaintiffs by their agent deposited $1,500 in money with the defendants at Great Salt Lake City, which money the defendants, for the accommodation of the plaintiffs, undertook to transmit to them at St. Louis, by purchasing therewith a safe or reliable draft or drafts; if the defendants took the said money and added thereto their own and other moneys, so that the aggregate amounted to the sum of $15,209.93, and purchased therewith the draft spoken of by the witnesses; if the defendants purchased said draft in their own name, or in the name of their agents, and without the consent thereto of the plaintiffs; and if the defendants have since held said draft, and kept the control of the same, and have compounded or received part payment thereof in discharge of the whole, without the consent of the plaintiffs, then the defendants are liable in this action."

This declaration of law, in our opinion, is erroneous. The contract of the defendants is what is called in the civil lay *mandatum*, and Chancellor Kent says, "a mandate is when one undertakes, without recompense, to do some act for another in respect to the thing bailed." It is defined by other writers to be 'a bailment of goods, without reward, to be carried from place to place, or to have some act performed about them. (2 Jones on Bail. 117.)

To a proper understanding of the question involved in this case, it is important to ascertain what obligations the law imposes upon the mandatary, and what amount of care and diligence he is required to exercise with respect to the matter committed to his charge. No general rule can be laid down which will be applicable to all cases of gratuitous bailment, for with regard to the care necessary to be taken much depends upon the circumstances of each particular case and the character and value of the thing bailed, and its liability to loss or injury.

Kent, in his Commentaries (vol. 2, p. 569), says "it is

conceded in the English, as well as in the Roman law, that if a party makes a gratuitous engagement, and actually enters upon the execution of the business, and does it amiss, through the want of care, by which damage ensues to the other party, an action will lie for the misfeasance." He also contends that a bailee who acts gratuitously in a case in which neither his situation nor employment necessarily implied any particular knowledge or professional skill, is held responsible only for bad faith or gross negligence, and instances the case of a general merchant who undertook, voluntarily and without reward, and upon request, to enter a parcel of goods for another, together with a parcel of his own of the same sort, at the custom-house, for exportation, and he made an entry under a wrong denomination, whereby both parcels were seized ; it was held he was not liable for the loss, inasmuch as he took the same care of the goods of his friend as of his own, and had not any reward for his undertaking; and he was not of a profession or employment that necessarily implied skill in what he undertook. He acted in good faith, and that was all that could be required. (Shields v. Blackburn, 1 H. Black. 158.)

Lord Loughborough, in the Shields case, said : " that when a bailee undertakes to perform a gratuitous act, from which the bailor alone is to receive benefit, then the bailee is only liable for gross negligence ; but if a man gratuitously undertakes to do a thing to the best of his skill, when his situation or profession is such as to imply skill, an omission of that skill is imputable to him as gross negligence." This view of the law is adopted by Story, who holds that at common law, when the contract is wholly gratuitous, and for the benefit of the mandator, the mandatary is bound only to slight diligence and only responsible for gross neglect, (Story Bailm., § 174,) and the American cases, almost universally, adopt the same rule. (Tompkins v. Saltmarsh, 14 Serg. & Ra. 275 ; Beardslee v. Richardson, 11 Wend. 25 ; Foster et al. v. The Essex Bank, 17 Mass. 497.)

The defendants, though acting gratuitously, having re-

ceived the money of the plaintiffs, and undertaken to transmit it to them, were bound to perform their undertaking in good faith, and with due diligence and attention adequate to the trust reposed in them, and this question of diligence is one of fact, to be tried like any other fact in the case, and upon the determination of which depends the liability of the defendants; but in the declaration of law made by the court below, this question of diligence, the only real question in the case, is entirely ignored, and the defendants made liable although they may in good faith and with due care and attention have attempted to transmit the money by the means and in the manner most usual in such cases, and which a man of ordinary prudence would be likely to adopt.

For this error, the judgment will be reversed and the cause remanded; Judge Dryden concurring.