George P. Funkhouser, Appellant v. Charles Ingles, Respondent.

### March 30, 1885.

1. Mandate — Bailment—Characteristics of — Duty and Liability of Mandatory.—A *mandate* is where one undertakes, without recompense, to do some act for another in respect to the thing bailed. It is therefore much allied in its characteristics to a *deposit*. In the case of malfeasance or of misfeasance there is a liability resting on the plain principle of justice, that the mandatory has, in the first instance, his free will and pleasure to accept or refuse the office, and to renounce it after the undertaking, *provided* he restores the property and places the mandator in *statu quo*. If he accepts the undertaking it is deemed a part execution of the contract, and it is sufficient consideration to support the contract. —Story on Bailments, 9th ed., sect. 162–171; Conley on Torts, 629-632 ; *Eddy* v. *Livingston*, 35 Mo. 487–493.

2. Pleading — Demurrer to Petition — Case Adjudged.—The petition in this case distinctly avers, that at the request of the plaintiffs, the defendant promised and agreed to file a certain deed of mortgage for record, which had been given to plaintiffs by mortgagor as a security ; that defendant accepted the gratuitous bailment, and undertook to perform and by his acceptance lulled the plaintiffs to inaction ; that instead of performing, or filing the deed for record, he retained it from record, destroyed it, and obtained an advantage over plaintiff by taking a mortgage on the property to himself and others, and recording it, by reason of which acts of the defendant the plaintiffs lost their security and

were compelled to pay the debt of their principal (the mortgageor). *Held* these allegations disclose a clear case of malfeasance and a liability of defendant for the damages to plaintiffs resulting from his wrongful acts.

APPEAL from Clinton Circuit Court, HON. GEO. W. DUNN, Judge.

*Reversed and remanded with directions.*

The facts sufficiently appear in the opinion.

THOMAS J. PORTER, for appellants.

I.   The main point relied upon in the court below, and upon which the circuit court held the petition defective, was that there was no consideration for the alleged undertaking.   This would be conceded if this were an action *ex contractu.*

II.   Respondent admits by his demurrer: 1. That he promised to file the mortgage for record, to complete and perfect appellant's security as against the claims of subsequent creditors.   2. That other debts and mortgages on the property, in its full value, were contracted for respondent's own benefit, and further, with his knowledge.   3. That he not only violated his promise by failing to file mortgage for record, but conceals his knowledge of its existence with the purpose and intention fraudulently to deprive appellants of their security and gain priority over them for himself and other parties.   4. Knowing that appellants relied upon him to record their mortgage, he destroyed the instrument.   5. In consequence of his fraud appellants have been damaged to the extent of 600 dollars.

III.   In the face of these admissions it was held by the court below that there is no redress because *the promise was voluntary.*   The fact of the promise is merely by way of inducement to explain the possession of the mortgage.   It is not sought to charge him on his promises for failing to record the deed, but for his fraud in withholding it from the record and destroying it.

IV.   Having assumed to act, he is bound to act in good faith; and if he acts in bad faith, he cannot claim exemption from liability for his tort because it was committed

under a promise which imposed no legal obligation.—
Story on Bailments 4th ed., sect. 169, 171, sect. 2, note;
*Coggs* v. *Bernard*, 2 Lord Raymond, 909–919; *Eddy et al.* v. *Livingston*, 35 Mo. 487.

J. F. Harwood, Ramey & Brown, and Chas. Ingles, for respondent.

I. The petition does not state cause of action and the demurrer was rightfully sustained. The *gravamen* of this action is the failure of defendant to file for record the mortgage and afterwards destroying the same. Was Ingles legally bound to perform such act for the plaintiffs?

II. The contract was not binding on defendant because there was no consideration for the performance of the promise.—Chitty on Pleadings, 14 Am. ed., p. 135; 6 Wait's Actions and Defences, p. 369.

III. As to the destruction of mortgage, petition fails to show any damage, or to state that any other mortgages have been recorded, or any valid liens put upon the property, or any obstacle put in the way of plaintiffs enforcing their mortgage in a court of law; under the facts as stated in the petition, defendant could not prevent plaintiffs taking possession of the mortgaged property, or oppose them successfully in any proceeding regarding such property.

IV. The petition fails to show, except by inference, that the mortgage was ever delivered by Nesbitt, or that Ingles had such possession as to authorize its recording by him. Not even the recording fee was furnished by plaintiffs.

V. The destruction of mortgage did not destroy plaintiffs' right under it, and the paper on which it was written has no recoverable value, and it is not shown that Ingles was paid for writing or acknowledging it.

Opinion by Philips, P. J.

As this cause rests wholly upon the sufficiency of the petition, we set it out in full:

"Plaintiffs state that on the 17th day of August, 1880, they executed a note together with one Charles J. Nesbitt,

for six hundred dollars, payable to the Merchants National bank at St. Joseph, due ninety days after date, with interest from maturity at the rate of eight per cent. That plaintiffs executed said note as security and for the accommodation of said Nesbitt, and with the understanding and agreement that said Nesbitt should execute to them a mortgage on a printing office, including all the furniture, presses, and material belonging thereto, situated in the city of Plattsburg, in said county, and known as the *Purifier*, to secure against liability on said note.

"Plaintiffs state that the defendant was at said time, an attorney at law and notary public, doing business in said city of Plattsburg, and as such was applied to by said Nesbitt, and the plaintiff, George P. Funkhouser, for himself and other plaintiffs to draft a mortgage on said property for said purpose and take the acknowledgment of said Nesbitt thereto; that said mortgage was duly executed and acknowledged, defendant performing the service aforesaid as requested by said parties.

"Plaintiffs state that defendant was requested by said George P. Funkhouser for himself and the other plaintiffs, and then and there promised and agreed, to place said mortgage in the recorder's office for record so as to complete and perfect plaintiff's security against any and all other debts, or mortgages upon said property, which said Nesbitt might contract. Plaintiffs state that said property was sufficient to indemify them against any loss by reason of executing said note. Plaintiffs state that said Nesbitt did contract other debts and execute other mortgages on said property for the security of the defendant and other parties to the full value of said property, with the knowledge of defendant, and notwithstanding the defendant knew such subsequent mortgages were about to be executed, defendant concealed his knowledge of plaintiff's mortgage, and for the purpose and with the intention fraudulently to deprive plaintiffs of their security and gain priority over plaintiff's mortgage for himself and other parties and in violation and disregard of his agreement and undertaking to record plaintiff's

mortgage, and well knowing plaintiffs relied on him to file the same for record, defendant failed to record said mortgage, and without plaintiff's knowledge or consent, destroyed the same. Plaintiffs state that they were by the means aforesaid wholly defeated in their said security; that they have been compelled to pay and discharge said debt, amounting, principal and interest, to six hundred and ——— dollars.

"Plaintiffs state that said Nesbitt is, and was at the time said mortgage was given, wholly insolvent, and plaintiffs would not have signed said note except for the security aforesaid, all of which was well known to defendant.

"Plaintiffs state that by reason of the premises they have been damaged to the sum of six hundred and ——— dollars, for which they pray judgment, six per cent. interest, from the ——— day of ———, 1881."

To this petition, the defendant interposed the following demurrer:

Now here comes the defendant, Charles Ingles, and demurs to the plaintiff's petition for the following reasons:

1st. Because petition does not state facts sufficient in law to constitute a cause of action.

2d. Because the petition fails to show any consideration paid to defendant by plaintiffs for the promise and undertaking set forth in their complaint.

3d. Because the complaint wholly fails to show any legal liability on part of the defendant to perform the acts complained of in their said complaint.

The court sustained the demurrer, and plaintiffs prosecute this appeal.

1. The principal objection urged against the petition is, that it fails to disclose any consideration, moving from plaintiffs to the defendant, for the undertaking, and, therefore, it is a case for the application of the rule: *ex nudo pacto non oritur actio*. If this were an action based simply on the contract, and seeking to enforce it, the demurrer would be well taken. The transaction between plaintiffs and defendant constitutes a mandate. "A mandate," says Kent, "is when one undertakes, without

recompense, to do some act for another in respect to the thing bailed." Story defines a mandate to be "a bailment of personal property, in regard to which the bailee engages to do some act without reward."

It is, therefore, much allied in its characteristics to a deposit. The unquestioned rule of the civil law was, that while the mandatory was at perfect liberty to reject the office, and might at any time discontinue his trust by restoring the property to the owner, yet having accepted the property, and retaining it, he must perform his undertaking, and in default thereof he was held liable for all damage resulting from his nonfeasance, as much so as in the case of a positive misfeasance.

And Sir William Jones, in his work on Bailments, contends that the same doctrine obtains in the common law. Story, however, in his treatise on Bailments, sects. 170–171, makes a distinction between the nonfeasance and the malfeasance of the mandatory. As to the former, a valuable consideration being an indispensable element in executory contracts, the undertaking is to be treated as purely gratuitous, and absolutely void. As to the latter there is a liability, resting on the plain principle of justice that the mandatory has, in the first instance, his free will and pleasure to accept or refuse the office, and to renounce it after the undertaking, provided he restores the property and places the mandator in *statu quo*.

If he accepts the undertaking, it is deemed a part execution of the contract, and it is sufficient consideration to support the contract. "For in such a case there arises, from such a delivery and receipt, a sufficient consideration to support the contract and to found an action for any negligence or omission in the due execution of the mandate. It is not necessary, to constitute a sufficient consideration to support the contract, that the bailee should derive some benefit from it. It will be sufficient if the bailor, on the faith of the promise, parts with some present right, or delays the present use of some right, or suffers some immediate prejudice or detriment, or does some act at the bailee's request." (Story on Bailment, 162, 9th ed.)

Cooley on Torts, pp. 629–632, says: "The bailee who accepts a trust for the benefit of the bailor is, of course, obligated to its performance, and he is not discharged from this obligation unless he has done all that can be reasonably required of him in respect to it. But he has not done all that can be reasonably required of him if he has been guilty of negligence; for negligence implies fault, and to be in fault in discharging a legal duty to another is to place one's self under legal obligations to make good the consequential loss. Liability, as gratuitous bailee, only arises when the trust has been once assumed: the promise to accept such a trust is void for want of consideration; and probably after he has accepted, the bailee may surrender it without performance, if he restore the property uninjured, and without having put the bailor to any inconvenience or damage." These texts are amply sustained by adjudicated cases. In *Graves* v. *Ticknor* (6 N. H. 537), the plaintiffs, merchants at Sunderland, Mass., desired to send $100 to one Colt, at Hartford, Conn. Finding the defendant was a passenger in a stagecoach going to Hartford, they requested him to convey and deliver the package to Colt. He accepted the office, but failed to deliver the package, or account for it. While the defendant was a bailee without hire, the court says: "If the bailee has been guilty of fraud, or gross negligence, or misuser, he is liable for damages." In *Jenkins* v. *Motlow* (1 Sneed, Tenn. 248), it is held: that where a captain of a steamboat undertakes, without charge, to carry a sum of money for one of his passengers from one point to another, he is bound to use a degree of diligence and attention adequate to the performance of the trust, and if he fail to exercise ordinary care, under the circumstances of his situation, whereby the money is lost, he is guilty of negligence and must make good the loss. In *Persch* v. *Quiggle* (57 Pa. 247), it is held: "An agent, without reward, or bailee, without hire, responsible only for ordinary care, cannot use the bailment for his own purpose, or needlessly expose it." Likewise in *Bland* v. *Womack* (2 Murphy, N.

C. 373), it is held: that a bailee who undertakes to do an act gratuitously is bound to use ordinary care and caution; and if he loses the property entrusted to him, but does not lose his own like property, it is clear he did not exercise becoming care, for had he done so the money intrusted to him would have been treated as his own, and consequently not lost.

This principle is recognized by our Supreme Court in *Eddy* v. *Livingston* (35 Mo. 487–493). ·

Applying the principles of law to the facts disclosed in the petition, we are satisfied it states a good cause of action. It distinctly avers that, at the request of the plaintiff, the defendant promised and agreed to have the deed recorded. He accepted the gratuitous bailment, and undertook to perform. By this acceptance he lulled the plaintiffs to inaction. Instead of either performing, or returning the deed, he retained it from record, destroyed it, and obtained an advantage over his bailor by taking a mortgage on the property to himself and others, and recording it; by reason of which acts of the defendant, the petition alleges, the plaintiffs lost their security and were compelled to pay the debt of their principal.

These allegations disclose a clear case of malfeasance, and a liability of the defendant for the damages to plaintiff resulting from the wrongful acts.

2. Counsel for defendants make many ingenious criticisms on the lack of technical averments in the petition. It is objected, for instance, that the petition does not show how any damage could result to the plaintiffs from the mere corporal destruction of the mortgage deed, as plaintiffs, notwithstanding its destruction, might maintain action on it as a lost instrument. But counsel seems to lose sight of the fact that the deed was a chattel mortgage. The mortgageor being in possession of the property, unless the mortgage was recorded, a purchaser or subsequent incumbrancer under the mortgage would hold the property, even though he had actual notice of the prior mortgage to plaintiffs.—*Bryson* v. *Penix*, 18 Mo. 13; *Wilson* v. *Milligan*, 75 Mo. 41; *Selking* v. *Hebel*, 1 Mo. App, 341.

By the destruction of the deed the defendant rendered its record impossible. By withholding it from the record he let in subsequent purchasers and mortgagees, and, as is alleged in the petition, with an evil intent.

3. It is further objected that it does not appear how the plaintiff sustained any loss. The petition, after setting out the acts of defendant, says plaintiffs lost their security and sustained damage. That was sufficient. A party is not required to set out his evidence in the petition. Section 3546, Revised Statutes, directs that the court, in construing a pleading for the purpose of determining its effect, shall construe its allegation liberally, with a view to substantial justice between the parties.

4. It is finally suggested in argument that, for aught appearing from the petition, the plaintiff never furnished the defendant with any money to pay for recording the mortgage, and that a gratuitous bailee cannot be required to incur expense or advance money in the care of the property. If there be any merit in the suggestion the defendant had better answer and plead the fact. It may be well enough, however, to observe that if the defendant refused to deliver the deed for record and have it recorded, because the plaintiffs did not advance the recorder's fee, he would have to show further that he advised plaintiffs timely of their omission, and offered to surrender the deed to them, so as to have afforded them an opportunity to protect their interest. The demurrer admitting the facts stated in the petition, we think the court erred in sustaining it. The judgment of the circuit court is reversed, and the cause remanded for further proceeding in conformity with this opinion. All concur.